IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PINNACLE BANK, as successor trustee of )
The Ransom Family Trust,                )
                                        )   NO. 3:21-cv-00849
        Plaintiff,                      )
                                        )   JUDGE RICHARDSON
v.                                      )
                                        )
FIDELITY AND DEPOSIT COMPANY            )
OF MARYLAND,                            )
                                        )
        Defendant.

## **MEMORANDUM OPINION**

Pending before the Court is Defendant Fidelity and Deposit Company of Maryland's Motion to Dismiss (Doc. No. 8, "Motion"), supported by an accompanying Memorandum in Support (Doc. No. 9). Plaintiff Pinnacle Bank, litigating this case as successor trustee of the Ransom Family Trust,[1] responded in opposition (Doc. No. 10, "Response"), and Defendant replied (Doc. No. 11, "Reply"). For the following reasons, the Motion will be denied.

## **BACKGROUND**[2]

On October 21, 2018, an accidental fire damaged a building located on commercial property owned by the Ransom Family Trust, located at 301 N.W. Broad Street, Murfreesboro, Tennessee (the "Insured Premises"), which suffered substantial direct physical loss and damage ("Loss"). (*See* Doc. No. 1-1 at ¶¶ 1, 15). The Loss was a total loss to the building on the insured premises. (*Id.* at ¶ 16). At that time, Defendant insured the Insured Premises via an insurance policy

---

[1] The Ransom Family Trust is the actual owner of the property at issue in this lawsuit (the Insured Premises) and Plaintiff (Pinnacle) brought this lawsuit in its capacity as trustee. (Doc. No. 1-1 at ¶ 1).

[2] The facts in this section are taken from the Complaint (Doc. No. 1-1) and are taken as true for the purposes of this Motion.

bearing Policy No. TPP 3801411 02, obtained by Plaintiff as trustee for the Trust. (the "Policy"). (*Id*. at ¶¶ 5, 7). After Plaintiff promptly reported the loss, Defendant investigated the claim and determined that the loss resulted in covered damage. (*Id*. at ¶¶ 17-18). Defendant even opined that the Insured Premises required demolition. (*Id*. at ¶ 19).

Defendant sought and received from its consulting firm, J.S. Held, a reconstruction estimate (dated December 21, 2018) for the Insured Premises totaling $518,532,79 (replacement cost value). (*Id*. at ¶ 20). Upon receipt of the estimate, Defendant instructed J.S. Held to decrease the amount of the estimate, and accordingly, in its estimate dated December 27, 2018, J.S. Held decreased the figure to $372,298.99 (replacement cost value) / $281,696.19 (actual cash value) (the "Preliminary Estimate"). (*Id*. at ¶ 21). On February 13, 2019, Defendant issued a payment to Plaintiff for the actual cash value as stated in the Preliminary Estimate, less the applicable deductible, which totaled $279,196.19. (*Id*. at ¶ 23).

In March 2019, Defendant advised Plaintiff that it had instructed J.S. Held to re-inspect the Insured Premises. (*Id*. at ¶ 24). The purpose of the re-inspection was to determine the increased costs of construction due to the enforcement of applicable ordinances and laws, *i.e*., building codes. (*Id*.). Defendant unequivocally advised Plaintiff that it would adjust the Preliminary Estimate after it determined the full costs of reconstruction and obtained bids from a general contractor for the same. (*Id*.). Defendant, however, failed to provide the report from the re-inspection for over one year. (*Id*.).

Also in March 2019, Plaintiff retained a general contractor, Smith Design/Build ("Smith"), to assist in evaluating the loss and to begin the reconstruction process. (*Id*. at ¶ 25). Plaintiff and Smith likewise engaged an architect for the reconstruction design, and they had extensive discussions with Murfreesboro city officials concerning the approval of the construction

documents. (*Id*. at ¶ 26). The approval process took some time, as it required approval from the Planning Commission and was complicated by numerous site conditions, such as parking, traffic patterns, architectural compliance, safety, and landscaping. (*Id*. at ¶ 27). The reconstruction of the Insured Premises was set to begin in late 2019 or early 2020. (*Id*.). In January 2020, Smith completed its bid to reconstruct the Insured Premises, which totaled more than $1.3 million (the "Smith Estimate"). (*Id.* at ¶ 28). Plaintiff provided the bid to Defendant, which advised that it would review the same. (*Id*. at ¶ 29). Then, the COVID-19 pandemic caused numerous delays. (*Id*. at 30).

The Policy included a "Suit Limitation Clause" that limited to a specified period the time for suit to be filed against Defendant. The Suit Limitation Clause provides:

> **Legal Action Against Us** - No insured may bring a legal action against us under this Coverage Part unless:
>
> 1. There has been full compliance with all of the terms of this Coverage Part; and
>
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Doc. No. 1-1 at 74). In August 2020, Plaintiff requested an extension of the Policy's time limit for the recovery of the increased costs of construction concerning applicable building codes. (*Id*. at ¶ 32). On September 30, 2020, Defendant agreed to a six-month extension. (*Id*.).

After months of delays and numerous requests by Plaintiff for more prompt consideration of the Smith construction proposal, Defendant eventually received a revised estimate from J.S. Held dated July 30, 2020, which totaled $625,808.04 (replacement cost value) (the "Revised Estimate"). (*Id*. at ¶ 31). After months of additional delays and repeated assurances from Defendant that a supplemental payment would be issued, Plaintiff finally, on March 25, 2021, received an additional payment from Defendant totaling $206,757.94, which was based on the Revised

Estimate from J.S. Held. (*Id*. at ¶¶ 33-36). Plaintiff disputed the sufficiency of this payment, which was based on the Revised Estimate from J.S. Held, giving rise to a disagreement between the parties over the value of the loss. (*Id*. ¶¶ 36-39). Due to the drastic disparity between J.S. Held's Revised Estimate and the Smith Estimate, Plaintiff was unable to begin its reconstruction of the Insured Premises. (*Id*. at ¶ 37).

Plaintiff filed this lawsuit in the Circuit Court for Rutherford County, Tennessee, on September 10, 2021 (Doc. No. 1-1) asserting: (i) in Count One a claims of breach of contract based on Defendant's alleged "failure to pay the amounts owed to Plaintiff for the Loss pursuant to the insurance coverage afforded by the Policy" (*id.* at ¶ 59); and (ii) in Count Two a request for a declaratory judgment, asking the "Court to declare its rights as it relates to Defendant's payment obligations to Plaintiff" (Count Two). (*Id*. at ¶ 64). On November 11, 2021, Defendant filed a Notice of Removal to this Court (Doc. No. 1). On November 18, 2021, Defendant moved to dismiss Plaintiff's Complaint. (Doc. No. 8). This matter is now ripe for adjudication.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched

as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## ANALYSIS

In a diversity action, such as this action, the district court applies the relevant state substantive law. *E.g. Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Here, the parties are in agreement that Tennessee law applies, and the Court agrees.[3]

Under Tennessee law, an insurance policy can establish an enforceable, agreed-upon limitations period within which an applicable lawsuit can be filed (or, to put it more aptly, outside of which a lawsuit cannot be filed). *See, e.g., Brick Church Transmission, Inc. v. Southern Pilot Ins. Co.*, 140 S.W. 324, 329 (Tenn. Ct. App. 2003) (citing *Hill v. Home Ins. Co*., 125 S.W.2d 189,

---

[3] Notably, Tennessee law is applicable specifically to the below-discussed issue of when Plaintiff's cause of action accrued for limitations purposes. It is true that in some contexts (in particular the context of (federal) claims brought under 42 U.S.C. § 1983) in which state law governs the identity of the applicable statute of limitation (and accordingly the applicable limitations period), it is nevertheless federal law that governs when the cause of action accrued. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). But this is not true for state-law claims brought pursuant to federal courts' diversity jurisdiction. *See Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 204 (1st Cir. 2015) (noting that the Supreme Court observed in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) that a claim in a diversity action "accrues and comes to an end when local law so declares" and agreeing with that various other circuits holding that state law governs when a state-created cause of action accrued). The Court agrees with the First Circuit that "this rule makes eminent sense because a federal court sitting in diversity must apply related state-law rules that form 'an integral part of the several policies served by the [state's] statute of limitations.'" *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980)).

192 (Tenn. 1938). As noted above, the Policy at issue here provides that "[n]o insured may bring a legal action against [Defendant] under this Coverage Part unless . . . the action is brought within 2 years after the date on which the direct physical loss or damage occurred." (Doc. No. 1-1 at 72).[4] The parties agree that based on this provision, a two-year limitations period applies.[5] But they disagree as to when that two-year limitations period began to run.

Defendant claims that based on the provision just quoted, the limitations period began to run on the date on which the direct physical loss or damage occurred. And Defendant further argues that (assuming that this is indeed when the limitations period began running) that Plaintiff's Complaint is untimely. (Doc. No. 9). Defendant points out that Plaintiff alleged in the Complaint that the "direct physical loss and damage" occurred "[o]n or around October 21, 2018" when "an accidental fire damaged the building located on the Insured Premises." (*Id*. at 1-3 (citing Doc. No. 1-1 at ¶ 15)). Defendant notes that the Complaint alleges that "the direct physical loss or damage occurred" on October 21, 2018, and Defendant therefore contends that it is this date that triggers the limitations period. Thus, according to Defendant, to be timely, Plaintiff's claims needed to be filed within two years of the October 21, 2018 date. (*Id*.). Plaintiff did not file its Complaint until September 10, 2021, and so Defendant asserts that the Complaint "was clearly filed almost three (3) years 'after the date on which the direct physical loss or damage occurred' on October 21, 2018." (*Id*. at 3). So if Defendant is correct that the limitations period began to run on the date on

---

[4] This provision (for what the Court herein refers to as a "contractual" limitations period) trumps Tennessee's statute of limitations, prescribing a limitations period of six years, that generally applies to contract-based causes of action. Tenn. Code Ann. § 28-3-109(a)(3) (setting a six-year limitations period "after the cause of action accrued" to commence an action on a contract).

[5] It appears readily apparent that Count Two of the Complaint is viable if (and only if Count One is viable). Thus, the Court concludes, and the parties seem to assume, that if Count One is time-barred then Count Two is time-barred, and that if Count One is not time-barred, then Count Two is not time-barred. Accordingly, regarding the instant limitations issue, the Court's conclusion as to the cause of action styled as one for breach of contract (Count One) is dispositive of its conclusion as to Count Two (styled as one for declaratory relief).

which the direct physical loss or damage occurred, Defendant is correct that Plaintiff's action is time-barred.

In the Response, Plaintiff asserts that Defendant "incorrectly argues that the date of loss triggers the accrual of the shortened [two-year contractual] limitations period, yet Tennessee law is clear that this position is incorrect." (Doc. No. 10 at 6). What Plaintiff is really saying is that Defendant is incorrectly asserting that the date of loss triggers the *running of the limitations period* (as opposed to the "*accrual*" of the limitations period or, for that matter, Plaintiff's cause of action) although the parties' terminology muddies the waters on this point.[6] Plaintiff is correct that Defendant ignores applicable Tennessee law as to when the limitations period begins to run.

---

[6] Plaintiff's reference here to "accrual" implicates a significant point about terminology. Plaintiff here refers to Defendant making an argument about when "accrual" occurred, and in one place (although only one place) in its briefing, Defendant does speak as if the issue is when Plaintiff's cause of action "accrued." (Doc. No. 11 at 4). In so doing, however, the parties are being inexact. The issue here is when the two-year limitations period began running. But that does not necessarily mean that the issue devolves to when Plaintiff's cause of action accrued, because (as the undersigned noted decades ago) a limitations period does not *always* began running at the time the claim accrued even if *usually* does:

> A limitations period generally begins to run from the time the cause of action "accrued." Contrary to language in some opinions, however, the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so. As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods,[127] or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1036–37 (1997). It bears mentioning—on a point that seems widely understood but rarely articulated—what it means to sue that a cause of action has accrued: that the claim is (to use a familiar metaphoric term) ripe, *i.e.*, no longer premature as it was prior to the time of accrual. *See Davidson Cty. v. Beauchesne*, 39 Tenn. App. 90, 96, 281 S.W.2d 266, 269–70 (1955) (noting that "if the cause of action had not accrued[, then] the suit was premature").

On closer inspection, it appears that Defendant is not really making an argument as to when Plaintiff's cause of action accrued, but rather an argument as to when the limitations period for that cause of action began running irrespective of whether that time is the time of *accrual*. And indeed, it is clear that Defendant is asserting a date on which the limitations began running that is not necessarily tied to the date of accrual—the date on which *state law* says a cause of action is ripe—but rather is tied to particular language in the Policy. (Doc. No. 11 at 4).

Finally, in another point about terminology, the Court notes that although Plaintiff referred to the accrual of *the limitations period*, in the Court's view limitations do not accrue but rather *begin running*. True, limitations periods usually (though not always, as discussed above) begin running when the *cause of action* accrues, but that is not to stay that they beginning running when they themselves "accrue" or that they ever "accrue" at all.

It is well settled that under Tennessee law, "[a] provision in an insurance policy limiting the time for suit to be filed to a specified period "after the loss" has been construed by [Tennessee] courts [ ] to mean that the period of limitation commences when the right to maintain an action on the policy has accrued rather than from the date of the event causing the loss[.]" *Dixon v. Thomas Jefferson Ins. Co.*, No. 6, 1989 WL 150720, at *4 (Tenn. Ct. App. Dec. 13, 1989) (citing *Phoenix Ins. Co. v. Fidelity & Deposit Co.*, 37 S.W.2d 119 (Tenn. 1931)); *see also Hall v. Allstate Ins. Co.*, No. 3:13-CV-397- CCS, 2015 WL 8492458, at *3 (E.D. Tenn. Dec. 10, 2015) ("The fire in this case occurred on June 2, 2010, and under the language of the policy the Plaintiff would have had one year from that date, in which to file her suit. However, under Tennessee law, the contractual limitation provision runs from the date on which the insurer actually denies the claim."). Thus, the Court must and does rejects Defendant's contention that the limitations period began running on October 21, 2018.[7]

The Court understands why Defendant might have thought that the limitations period began running when the applicable Policy provision said it began running—meaning, just as Defendant said, "the date on which the direct physical loss or damage occurred." After all, as noted above, Tennessee law directs the Court to take and use the limitations period specified in this provision (rather than the one specified by the otherwise applicable statute of limitations), so why should Tennessee law direct the Court to (i) flat-out disregard what this provision has to say about when the limitations period begins to run, and instead (ii) run the limitations period from the date of

---

[7] Defendant seemingly argues that Plaintiff somehow acquiesced in its view of when the limitations begin running (from the date of physical loss (October 21, 2018)), because Plaintiff asked Defendant for a six-month extension of the limitations period from two-years after that date. However, Defendant does not provide the Court with any authority that supports its position that this kind of request should be treated in subsequent litigation as indicating some sort of concession. And it only stands to reason that an insured might make this sort of request as part of a belt-and-suspenders approach, not conceding that it needs an extension measured from that date but finding it prudent to seek such an extension anyway. Instead of crediting Defendant's unsupported position, the Court will instead follow clear Tennessee law regarding when the limitations period begins running.

accrual? That's a good question, but there may be a good answer; this rule well may be justifiable, especially in particular situations.[8] But in any event, whether or not the rule is a good one, it is in fact the rule, and the Court must follow it and thus recognizes that the limitations period began running on the date on which Plaintiff's cause of action accrued.

So when did Plaintiff's cause of action accrue? As indicated above, this question devolves to "when did Plaintiff's right to maintain an action on the policy become ripe, *i.e.*, was no longer premature?" "[Such] accrual date varies depending upon the language of the policy and the actions of the insured and insurer in relation to that policy." *Burton v. Nationwide Ins. Co.*, No. 1:07-CV-129, 2007 WL 3309076, at *3 (E.D. Tenn. Nov. 6, 2007). That is, policy language can dictate (and foster the delay of) the date of accrual via language that effectively presents a contractual bar to bringing suit unless and until certain prerequisites are satisfied. The period that precedes that time at which such prerequisites are satisfied (if ever) is known as the "immunity period." "An 'immunity period' (or 'settlement period') is a contractually-created period of time during which an insurer is immune from litigation while it investigates, evaluates, and may negotiate to settle the claim." *Id.* (citing *Brick*, 140 S.W.3d at 329 ("All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company."); *Lloyd's*, 107 S.W.3d at 498 ("All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company."); *Hill*, 125 S.W.2d at 192 ("[P]rovisions for notice and proofs of loss to be furnished by the insured to the insurer within

---

[8] For example, the rule certainly would make sense in a hypothetical situation where, for whatever reason, under applicable law the insured's claim has not yet accrued (*i.e.*, is premature and thus cannot properly be filed) even though the limitations period prescribed in the policy (meaning, here, two years after "the date on which the direct physical loss or damage occurred"). In this situation, the rule would make sense because it would prevent a plaintiff from being time-barred from filing a claim that was still premature; that is, the rule prevents the policy language from perversely deeming the filing of a lawsuit *too late* when under the law such filing would still be *too early*.

sixty days from the date of the loss, which, in effect, afforded the insurer immunity from suit for such period of sixty days . . .")).

"Policies often include language requiring a 'proof of loss' to be filed" to make a claim if such a proof of loss is so requested by the insurer. *Id*. Such language is among the kinds of language that can trigger the immunity period. When a proof of loss is filed by the insured or requested by the insurer, "the contractual statute of limitations begins to run upon denial of liability or upon expiration of the immunity period, whichever comes first." *Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 500 (Tenn. Ct. App. 2002); *Brick*, 140 S.W.3d at 330. For example, the Policy at issue here states that "[i]n the event of loss or damage to Covered Property, [the insured] must . . . [s]end [the insurer] a signed, sworn proof of loss containing the information [the insurer] request to investigate the claim. [The insured] must do this within 60 days *after [the insurer's] request*." (Doc. No. 10 at 7 (emphasis added)). Thus, the Policy in this case requires Plaintiff to submit a proof of loss claim only in response to Defendant's request for a proof of loss to be filed (which appears to be typical among these types of insurance policies). The Policy also contains a "Loss Payment" clause, which provides that Defendant will respond with notice of its intentions within 30 days after it receives a sworn proof of loss. (Doc. No. 1-1 at 70 ("We will give notice of our intentions within 30 days after we receive the sworn proof of loss.")).So if a sworn proof of loss is filed, the immunity period lasts 30 days from the date of Defendant's reception of the proof of loss. And if a sworn proof of loss is requested but not filed—*i.e.*, not filed despite being requested—the immunity period lasts 60 days from the date of Defendant's request.

On the other hand, if no proof of loss is either (1) filed by the insured or (2) requested by the insurer (at least based on the specific language of this Policy), the insured's cause of action

accrues when the insurer denies the claim. *Das v. State Farm Fire & Cas. Co.*, 713 S.W.2d 318, 322-24 (Tenn. Ct. App. 1986); *see also Fox v. Massachusetts Bay Ins. Co.*, No. 2:13-CV-2567-JTF-DKV, 2015 WL 10791983, at *4 (W.D. Tenn. Feb. 23, 2015) (explaining that under Tennessee law, "when a proof of loss claim is not filed or requested by the insurer, as in this case, a cause of action does not accrue until the claim is denied"). Here, Plaintiff alleges in the Complaint that "Defendant has never requested a sworn proof of loss." (Doc. No. 1-1 at ¶ 42). The implication from the allegation is that because Defendant did not request a sworn proof of loss, a proof of loss was not filed. And although the Complaint does not clearly state that a proof of loss was not filed, the Court will construe the Complaint (in Plaintiff's favor, as it must do on a Rule 12(b)(6) motion where Plaintiff is the non-movant) as alleging that a proof of loss was not filed.[9] As stated above, when no proof of loss is submitted to the insurance carrier, a plaintiff's "cause of action accrues when the insurer denies the claim." *Das*, 713 S.W.2d at 322-24. The Complaint does not allege that there has been an outright denial of Plaintiff's claim. Indeed, it alleges the opposite: "[t]o date, Defendant has never denied Plaintiff's claim." (Doc. No. 1-1 at ¶ 52). However, under Tennessee law, a cause of action accrues upon a *partial* denial of a claim. *See Affordable Constr. Servs., Inc. v. Church Mut. Ins. Co., S.I.*, No. 119CV01288STAJAY, 2021 WL 781365, at *5 (W.D. Tenn. Mar. 1, 2021) (holding that under Tennessee law, the cause of action in an insurance claim accrued upon insurance company's partial denial of the claim because "[t]he fact that they were 'partial' denials is a difference without distinction."); *Tenalok Partners Ltd. v. Massachusetts Bay Ins. Co.*, No. 13-2565, 2014 WL 11320704, at *5 (W.D. Tenn. Nov. 14, 2014) (holding that the cause of

---

[9] Plaintiff contends in its Response that a proof of loss was never submitted, but the Court cannot consider this contention on the instant Motion; the Court construes Plaintiff's Complaint based only on what it stated in the Complaint and what is reasonably inferable from what is stated. On the other hand, the Court would not be speaking out of school were it to say that it takes some comfort from the fact that this contention by Plaintiff suggests unequivocally that Plaintiff will not someday dispute the Court's conclusion that the Complaint effectively alleges that no proof of loss was ever filed.

action in an insurance claim accrued upon insurance company's partial denial of claim.). And the Court construes the dispute regarding the sufficiency of the March 25, 2021 payment as a partial denial of Plaintiff's claim. Thus, Plaintiff's claim is clearly timely, because Plaintiff's claim accrued on the date of the partial denial: March 25, 2021. Therefore, per the Policy, the limitations period expires two years after this date on March 25, 2023. Accordingly, Plaintiff's claims are timely, and Defendant's Motion will be denied.[10]

## CONCLUSION

For the above-mentioned reasons, Defendant's Motion (Doc. No. 8) will be DENIED.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff also argues that the doctrine of equitable estoppel and waiver apply to save Plaintiff's claims in the event that the Court found them untimely. Because the Court does not find Plaintiff's claim untimely, the Court does not reach this argument.